**SIGNED this 10th day of May, 2012**

_____
John C. Cook
UNITED STATES BANKRUPTCY JUDGE

_____

### IN THE UNITED STATES BANKRUPTCY COURT FOR
### THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Incentium, LLC** | ) | **No. 11-10706** |
| | ) | **Chapter 7** |
| **Debtor** | ) | |
| | ) | |
| **Richard P. Jahn, Jr., Trustee** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Adv. No. 11-1147** |
| | ) | |
| **Richard Char** | ) | |
| | ) | |
| **Defendant** | ) | |

### M E M O R A N D U M

This adversary proceeding is before the court on the parties' cross-motions for summary judgment, regarding the plaintiff's assertion that certain severance payments made by the debtor to the defendant are avoidable as fraudulent transfers. The defendant's motion also seeks summary judgment on the plaintiff's assertion that the payments are avoidable as preferential transfers.

Having reviewed the motions, briefs, statements of undisputed material facts, stipulation of the parties, and plaintiff's affidavit, the court will grant the defendant's motion and deny the plaintiff's motion.

## I.

The record reveals the following undisputed material facts. The defendant was hired by the debtor as its Chief Executive Officer and President pursuant to an Employment, Confidentiality, Invention Assignment and Trade Secret Protection Agreement (the "Employment Agreement") that was signed on October 24, 2008, by the defendant and the Chairman of the debtor's Board of Members. Section 3(a) of the Employment Agreement provided for a base salary of $250,000 per year, and Section 4(b) of the Employment Agreement provided that, if the defendant was terminated without cause, he would be entitled to continue receiving his Base Salary for six months if he signed and complied with a release of the employer and did not apply for unemployment compensation:

> If the Employment Period is terminated by the Company without Cause, Executive shall be entitled to continue to receive his Base Salary payable in regular installments as special severance payments (the "Severance Payments") for a period of six (6) months following the date of termination (the "Severance Period"), if and only if Executive (i) has promptly, subject to applicable law, executed and delivered to the Company a general release of all claims against Parent, the Company, Parent's other Subsidiaries and their respective directors, officers and affiliates containing such terms as are customary and commercially reasonable for such a general release provided in the context of an employee separating from an employer (provided that in any event such general release shall provide for a complete and unconditional release of all claims by Executive, including without limitation claims that are unknown or unsuspected) and such general release has become effective, and only so long as Executive has not revoked or breached the provisions of the general release or materially breached any of the provisions of Sections 5 through 11 herein and (ii) does not apply for unemployment compensation chargeable to the Company during the Severance Period.

The defendant also became a member of the limited liability company's Board of Members in October 2008, after his employment had commenced.

On March 9, 2010, the debtor's Board of Members notified the defendant that it was terminating him without cause, and the debtor and the defendant signed a Separation Agreement dated as of that date. Section 2(b) and (c) of that agreement provide in relevant part:

> (b) <u>Severance</u>. In accordance with Section 4(b) of the Employment Agreement, but subject to the terms and conditions set forth in <u>Section 2(c)</u>, beginning on the Separation Date and continuing as set forth below Executive shall be entitled to receive the following severance payments and other benefits (collectively, the "<u>Severance Benefits</u>"):
>
>> (i) An aggregate amount equal to $125,000 as special severance payments, which shall be payable in regular, ratable installments over a period of 6 months (the "<u>Severance Period</u>") commencing on the Separation Date in accordance with the normal payroll practices of Incentium as in effect on the Separation Date, but in no event less frequently than monthly.
>
>     . . . .
>
> (c) <u>Conditions Regarding Severance Benefits</u>. Executive shall be entitled to receive the Severance Benefits set forth herein during the Severance Period (A) <u>if and only if</u> (x) Executive has executed and delivered to the Company a general release in the form of <u>Exhibit A</u> attached hereto (the "<u>Release</u>"), which Release shall be incorporated as if fully set forth herein, and (y) the Release has become effective and is no longer subject to revocation no later than on the 60th day immediately following the Separation Date, and (B) <u>only so long as</u> Executive has not (w) revoked or breached (including, without limitation, by bringing any Claim, as defined therein) the Release, (x) breached any provision of this Agreement, (y) materially breached any of the provisions of Sections 5 through 11 of the Employment Agreement or (z) applied for unemployment compensation chargeable to the Company during the Severance Period. Executive shall automatically forfeit all of his rights to Severance Payments in the event Executive fails to satisfy any of the conditions set forth in clause (A) or (B) of the immediately preceding sentence.

Section 11(b) of the Separation Agreement reads:

> <u>Complete Agreement</u>. This Agreement and those agreements expressly referred to herein embody the complete agreement and understanding among the parties and supersede and preempt any prior understandings, agreements or representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way (including, without limitation, all provisions of the Employment Agreement that become automatically terminated upon termination

> of the Employment Period). For the avoidance of doubt, this Agreement does not supersede, preempt, modify or terminate any of the Restrictive Covenants, except as specified in Section 4 above, nor does this Agreement supersede, preempt, modify or terminate the Motivus Holdings, LLC Indemnification Agreement entered into between Executive and Holdings on December 18, 2008.

The defendant has admitted, for the purposes of the present motions, that the debtor's books and records reflect that it was insolvent from February 2010 forward.

The defendant did not render any benefit or service to the Debtor after the date of the Separation Agreement. The parties agree that the minimum amount of severance pay received between March 9, 2010, and September 17, 2010, was $104,810.36.[1] The defendant also received vacation pay of $10,096.80, and the plaintiff also contends that the defendant received back pay totaling approximately $12,000.00.

On February 10, 2011, an involuntary petition for relief under chapter 7 of the Bankruptcy Code was filed against the debtor, and an order for relief was entered on March 8, 2011. On September 29, 2011, the plaintiff filed the complaint initiating this adversary proceeding, which seeks to avoid the Separation Agreement as a fraudulent obligation, and to avoid the severance payments as fraudulent transfers and as preferential transfers. On April 2, 2012, the parties filed cross-motions for summary judgment, which address the avoidability of the Separation Agreement and of the severance payments to the extent of $104,810.36.

---

[1] The plaintiff asserts that the total amount of severance pay was in excess of $122,000, but seeks summary judgment only for the amount upon which the parties can agree.

## II.

A party is entitled to summary judgment if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court will construe all reasonable inferences in favor of the non-moving party. *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Where the evidence would permit a reasonable jury to return a verdict for the non-moving party, a genuine issue of material fact exists and summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the face of a summary judgment motion, the nonmoving party may not rest on its pleadings, but must come forward with some probative evidence to support its claim. *Celotex v. Catrett*, 477 U.S. 317, 325 (1986); *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (holding that nonmoving party must present "some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial"). In the words of Rule 56(c)(1) of the Federal Rules of Civil Procedure, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

### III.

#### A.

The plaintiff seeks recovery in this proceeding pursuant to § 548(a)(1)(B) of the Bankruptcy Code, which provides, in pertinent part:

> The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> . . . .
>
> (B)(i) received less than reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)   (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> . . .
>
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

The plaintiff's motion for summary judgment seeking to avoid the $104,810.36 in severance payments is predicated on clause (IV) of § 548(a)(1)(B)(ii), which does not require insolvency of the debtor at the time the relevant obligation was incurred or the transfer was made. In moving for summary judgment, the plaintiff seeks to avoid both the severance obligation in the Separation Agreement and the subsequent transfers of severance pay to the defendant. The defendant argues that the plaintiff cannot prevail under § 548(a)(1)(B)(ii)(IV) because (1) the severance obligation in the Separation Agreement was the same as the severance obligation set forth in the Employment

-6-

Agreement and otherwise satisfied the reasonably equivalent value requirement in the statute, (2) the original severance obligation in the Employment Agreement cannot be avoided because the defendant was not an insider at the time the obligation was incurred, (3) the defendant was not an insider when the severance payments were made, and (4) the severance obligation was incurred and the severance payments were made in the debtor's ordinary course of business. The defendant further argues that he is entitled to summary judgment under § 548 because (i) the plaintiff cannot avoid the original severance obligation, (ii) the subsequent transfers of severance pay to the defendant satisfied an unavoidable, antecedent debt of the debtor, and (iii) the plaintiff has no evidence that the transfers were not in exchange for reasonably equivalent value. Because it appears that the principal issue in this proceeding is whether the debtor's severance pay obligation to the defendant can be avoided by the plaintiff, it is to that issue that the court first turns.

**B.**

The severance obligation can be found in both the original Employment Agreement and the subsequent Separation Agreement. Obviously, the severance obligation in the Employment Agreement is not avoidable under § 548 because the Employment Agreement was executed more than two years prior to the debtor's bankruptcy filing.[2] The plaintiff argues, however, that it is the severance obligation in the Separation Agreement, not the severance obligation in the Employment Agreement, that he is seeking to avoid under the provisions of § 548(a)(1)(B)(ii)(IV). His argument thus essentially ignores the severance obligation contained in the Employment Agreement.

---

[2] The defendant argues that he was not an insider when the Employment Agreement was signed, but that fact is immaterial since the Employment Agreement predated the bankruptcy filing by more than two years.

Section 4(b) of the Employment Agreement provided for severance pay in the form of the continuation of the defendant's Base Salary for six months if he signed and complied with a release of the employer and did not apply for unemployment compensation, and the defendant's Base Pay was $250,000 per year so the six months of severance pay would total $125,000. Section 2(b)(i) of the Separation Agreement provided for severance pay of $125,000, payable in monthly installments over a six-month period, and Section 2(c) sets forth the same conditions to the defendant's receipt of the severance benefits. Indeed, Section 2(b) of the Separation Agreement makes clear that the "Executive shall be entitled to receive the following severance payments and other benefits" "[i]n accordance with Section 4(b) of the Employment Agreement." While the Separation Agreement supplemented Section 4(b) of the Employment Agreement, the latter was explicit regarding the defendant's rights upon termination without cause, and the Separation Agreement effected no substantive change to those rights, at least insofar as severance pay is concerned. *See Fanucchi & Limi Farms v. United Agri Prods.*, 414 F.3d 1075, 1081-85 (9th Cir. 2005). Moreover, the section in the Separation Agreement entitled "Complete Agreement" provided that "[t]his Agreement *and those agreements expressly referred to herein* embody the complete agreement and understanding among the parties and supersede and preempt any prior understandings, agreements or representations by or among the parties written or oral, which may have related to the subject matter hereof in any way (including, without limitation, all provisions of the Employment Agreement that become automatically terminated upon termination of the Employment Period)." (Separation Agreement § 11(b) (emphasis added).) As noted, one of the agreements expressly referred to in Section 2(b) of Separation Agreement was the agreement for severance pay "in accordance with Section 4(b) of the Employment Agreement." Thus, it does not appear that the severance obligation in the Employment

Agreement was extinguished or changed by the Separation Agreement, but rather it was incorporated into it.[3] Accordingly, the Separation Agreement did not create a new obligation that may be avoided under 11 U.S.C. § 548(a)(1)(B).

The facts in this proceeding differ markedly from the facts in *TSIC, Inc. v. Thalheimer (In re TSIC, Inc.)*, 428 B.R. 103 (Bankr. D. Del. 2010), a case upon which the plaintiff places primary reliance. In *TSIC,* the defendant and the debtor had entered into an Employment Agreement providing that the defendant would receive $850,000 in base salary, a retirement package, and a severance package upon termination of the defendant's employment regardless of cause. Within two years of the debtor's bankruptcy filing, the debtor and defendant entered into a Settlement Agreement providing for the defendant to receive $1.775 million in severance, $3.9 million in SERP benefits, $300,000 in secretarial and office allowances, and up to $800,000 in reasonable attorneys fees in

---

[3] The severance obligation in the Separation Agreement can be viewed either as an incorporation and continuation of the Employment Agreement's severance obligation or as a substitute obligation made in exchange for the severance obligation set forth in the Employment Agreement. Although it appears to the court that the language of the Separation Agreement incorporates and continues the severance obligation from the Employment Agreement, even viewing the obligation as a substituted obligation does not mean that the debtor failed to receive reasonably equivalent value for the exchange. Because the severance payment obligations under the two agreements were essentially identical, the value given in exchange for the severance obligation in the Separation Agreement was necessarily reasonably equivalent to the value of the severance obligation under the Employment Agreement. *See Steinberg v. Johnson (In re Edward M. Johnson & Assocs., Inc.)*, 61 B.R. 801, 806 (Bankr. E.D. Tenn. 1986) (transfer under stock purchase agreement having effect of relieving debtor of obligation to pay defendant preexisting salary obligation and bonus was exchange for reasonably equivalent value, noting that "the debtor's obligation to defendant under the employment agreement was discharged by the new undertaking set forth in the stock purchase agreement" and that stock purchase agreement "would embody all of what defendant was entitled to and expected to receive from the debtor corporation"), *rev'd on other grounds sub nom. Newton v. Johnson (In re Edward M. Johnson & Assocs., Inc.)*, 845 F.2d 1395 (6th Cir. 1988); *see also Whitlock v. Max Goodman & Sons Realty, Inc. (In re Goodman Indus., Inc.)*, 21 B.R. 512, 520 (Bankr. D. Mass. 1982) (obligation under guaranty issued by debtor not avoidable absent proof of value of cross-guaranty of debt owed by debtor).

negotiating the Settlement Agreement. A condition of the Settlement Agreement was the defendant's resignation and waiver of future claims against the debtor. The debtor in *TSIC* sought to avoid both the payment obligations set forth in the Settlement Agreement and the subsequent transfers of the payments to the defendant. In granting the trustee's motion for summary judgment under the provisions of § 548(a)(1)(B)(ii)(IV), the court stated that avoidance of the underlying severance obligation was not time barred because the debtor's obligation to pay the defendant arose on the date of the Settlement Agreement, which was within two years of the bankruptcy filing. The court held that the debtor could avoid the underlying severance obligation in the Settlement Agreement, "thereby effectively eliminating the debt." *Id.* at 115. Moreover, the court said that, "[b]ecause no debt existed, Debtor's transfer of [the defendant's] severance payment was for less than reasonably equivalent value" and thus the subsequent transfers to the defendant could be avoided. *Id*. The court concluded that the debtor could avoid the severance obligation in the Settlement Agreement, which was not time-barred, even though there was a preexisting settlement obligation in the Employment Agreement, which was time-barred, because the severance obligation in the Settlement Agreement differed materially from the nondescript severance obligation in the Employment Agreement and the debtor did not otherwise receive reasonably equivalent value for the Settlement Agreement's severance obligation. The court specifically noted that, "[a]lthough the Employment Agreement contemplated 'severance payments' and 'SERP benefits,' the details of these benefits were not finalized at the time the parties signed the Employment Argument [*sic*]." *Id.* at 114. Such a circumstance is not present here. In this case, Section 4(b) of the Employment Agreement set forth in detail the parties' rights upon termination and the severance obligation was not materially changed in the Separation Agreement but rather was incorporated into it.

-10-

Another case cited by the plaintiff in support of his motion for summary judgment is *Stanley v. U.S. Bank National Association (In re TransTexas Gas Corp.)*, 597 F.3d 298 (5th Cir. 2010). The facts in that case are also distinguishable from the facts presented here. In *TransTexas Gas Corp.*, the defendant was the former CEO of the debtor corporation. His original employment agreement provided that, if the debtor terminated the defendant without cause his severance payment would be $3 million, if he were terminated with cause his payment would be $1.5 million, and if he voluntarily resigned he would not receive any severance payment. Subsequently, the debtor's board of directors hired a law firm to investigate allegations of wrongdoing by the defendant and the law firm's report concluded that the defendant could be validly dismissed for cause. However, the report also stated that, if the defendant brought a lawsuit against the debtor contesting his termination, the result would be uncertain. Thereafter, and within two years of filing a chapter 11 bankruptcy petition, the debtor and defendant entered into a Separation Agreement wherein the debtor agreed to pay the defendant severance pay in the amount of $3 million if the defendant resigned. The defendant resigned and was paid $2,270.794.90 by the debtor before the payments ceased. During the ensuing chapter 11 case, the debtor obtained confirmation of a chapter 11 liquidating plan, and the liquidating trustee sought recovery under § 548 of the severance payments that the debtor made to the defendant. After a trial, the bankruptcy court found that the defendant's departure was a voluntary resignation and that he was not entitled to any severance pay. On appeal, the district court disagreed and concluded that the defendant's resignation was "part and parcel of the Separation Agreement, which created the right to severance pay if he resigned." *Id*. at 307. The district court nevertheless concluded that the debtor did not receive reasonably equivalent value for the $3 million

-11-

severance obligation in the Separation Agreement and thus it agreed that the severance payments to the defendant were fraudulent transfers pursuant to §548(a)(1)(B)(ii)(IV).

The appellate court affirmed the district court's factual conclusion that the debtor did not receive reasonably equivalent value for the severance obligation in the Separation Agreement because, at the time that obligation was created, the debtor had evidence of good cause to terminate the defendant from his employment. The Fifth Circuit stated:

> TransTexas did not receive reasonably equivalent value for providing [the defendant] greater compensation than required by the terms of the Employment Agreement. The district court agreed that even under the most favorable circumstances, [the defendant] could only have been entitled to $1.5 million under the Employment Agreement, basing that on the conclusion that there was good cause for terminating him.

*Id.* at 307-08. The court concluded that the obligation in the Separation Agreement and the subsequent transfers to the defendant could be avoided under §548(a)(1)(B)(ii)(IV). Notably, the Fifth Circuit stated that the issue before it was not the validity of the earlier Employment Agreement. *Id.* at 306-07. Rather, the issue was whether the severance obligation created by the Separation Agreement was incurred in exchange for reasonably equivalent value. Because that obligation, created within two years of the bankruptcy filing, provided more to the defendant than was required by the terms of the original Employment Agreement, the court affirmed the district court's conclusion that the debtor did not receive reasonably equivalent value for that new obligation. The court went on to say that, "[h]ad [the defendant] and the company not engaged in the transfer that has been declared fraudulent under Section 548, they may have agreed on a lesser amount that would represent a reasonable severance payment." *Id.* at 310.

In the present proceeding, there was not a new, unreasonable severance obligation created in favor of an insider within two years of the debtor's bankruptcy filing. Rather, the severance obli-

-12-

gation in the Separation Agreement was the same severance obligation created by the original Employment Agreement and was part of the overall compensation package negotiated to hire the defendant as the debtor's CEO. It is certainly not unusual for an employment contract designed to attract a high level executive to contain a severance obligation in the event that the executive is terminated without cause. The severance obligation in this proceeding, representing six months of the defendant's regular salary, was created in the Employment Agreement on October 28, 2008, and, unlike the facts in *TSIC* and *TransTexas Gas Corp.,* it was not changed to a different severance obligation within two years of the debtor's bankruptcy filing that could be avoided on grounds that reasonably equivalent value was not received by the debtor. The severance obligation in this proceeding was created in the original Employment Agreement and it is not avoidable under the provisions of § 548(a)(1)(B)(ii)(IV).

It follows that the severance payments are not avoidable either. The transfers of severance pay to the defendant satisfied the prior, unavoidable severance obligation, so the debtor received "value" in exchange for the transfers. 11 U.S.C. § 548(d)(2)(A). Moreover, the plaintiff has not, in response to the defendant's motion for summary judgment, offered any evidence that the value of the severance payments was not "reasonably equivalent" to the value of the severance obligation, which is an essential element of the plaintiff's case in chief. *See In re Wilkinson*, 196 F. App'x 337, 341-43 (6th Cir. 2006) (dollar-for-dollar reduction in debt to third party was reasonably equivalent value for the transfer). Accordingly, the defendant is entitled to summary judgment determining that the severance payments are not avoidable as constructively fraudulent transfers.

Because the undisputed material facts in this proceeding do not support the plaintiff's contention that the debtor failed to receive reasonably equivalent value in exchange for the severance

-13-

Case 1:11-ap-01147-NWW   Doc 29   Filed 05/10/12   Entered 05/10/12 12:47:37   Desc
Main Document - Memorandum/Opinion   Page 14 of 16

payments, the defendant is entitled to summary judgment on the plaintiff's claims to avoid the transfers under both § 548(a)(1)(B)(ii)(I) and (IV). It is therefore unnecessary to consider the defendant's other arguments that the defendant was not an insider at the time the transfers were made or that the transfers were in the ordinary course of the defendant's business.

### IV.

The defendant also seeks summary judgment on the plaintiff's cause of action for the avoidance of the severance payments as preferential transfers. In this regard, the defendant notes that the payments were not made within the 90-day period preceding the commencement of the debtor's bankruptcy case, and asserts that the extended one-year preference look-back period does not apply because the defendant was not an insider at the times the payments were made. *See* 11 U.S.C. § 547-(b)(4)(A), (B). The plaintiff responds that a transferee need not be an insider at the time the transfer was made, so long as he was an insider at the time the transfer is arranged, citing an early decision of this court in *Jahn v. Economy Car Leasing, Inc. (In re Henderson)*, 96 B.R. 820, 824 (Bankr. E.D. Tenn. 1989). That case did not resolve the insider issue presented here. In *Economy Car Leasing*, the court cited case law construing the preference statute as requiring "that insider status must be present at the time of the transfer, or at least at the time the transfer was arranged" *Id.* The court cited *Chase Manhattan Bank, N.A. v. Dent (In re Trans Air, Inc.),* 79 B.R. 947 (Bankr. S.D. Fla. 1987), and *DeRosa v. Buildex Inc. (In re F & S Central Manufacturing Corp.)*, 53 B.R. 842 (Bankr. E.D.N.Y. 1985), which held that insider status only had to exist at the time the transfer was arranged, but the court also cited *McWilliams v. Gordon (In re Camp Rockhill, Inc.),* 12 B.R. 829 (Bankr. E.D. Pa. 1981), which held that insider status had to exist on the exact date of the challenged transfer. *Economy Car Leasing,* 96 B.R. at 824. It was not necessary to resolve the issue presented in those

cases regarding the time insider status must exist, because the court found that the transferee in *Economy Car Leasing* was not an insider either at the time the transfers were arranged or at the times the transfers were made. *Id.* at 826.

Having now been presented with the precise issue of when insider status must exist for purposes of § 547(b)(4)(B), the court holds that the transferee must constitute an insider at the time the transfer was made, and that it is not enough that the transferee be an insider at the time the transfer was arranged. This holding is consistent with virtually all of the cases that have examined the issue in the last twenty years. *Zucker v. Freeman (In re Netbank, Inc.)*, 424 B.R. 568, 571-72 (Bankr. M.D. Fla. 2010). The court's conclusion is based on a straightforward reading of the statute, which states that the extended preference period applies "if such creditor at the time of such transfer was an insider." *See*, *e.g.*, *id.*; *Pummill v. McGivern (In re Am. Eagle Coatings, Inc.)*, 353 B.R. 656, 670 (Bankr. W.D. Mo. 2006). "The Supreme Court has made clear that statutes are to be construed according to their plain meaning unless to do so would be demonstrably at odds with Congressional intent or produce an absurd result." *Id.* (citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)).[4]

There is no genuine issue that the defendant was not an insider at the times the severance payments were made. Accordingly, the applicable preference reach-back period is 90 days, not one year. Because the payments were not made during the 90-day period preceding the commencement

---

[4] The Supreme Court has also expressed a clear preference for bright-line approaches in preference proceedings. *Netbank*, 424 B.R. at 572 (referring to *Barnhill v. Johnson*, 503 U.S. 393 (1992)). In *Barnhill*, the Court affirmed the Tenth Circuit's holding that a transfer by check is "made" at the time the check is honored, for purposes of 11 U.S.C. § 547(b), because "such a rule was consistent with the provisions of the Uniform Commercial Code (U.C.C.), was capable of easier proof, and was less subject to manipulation." *Barnhill*, 503 U.S. at 396.

of the debtor's bankruptcy case, the defendant is entitled to summary judgment on the plaintiff's preference cause of action.[5]

## V.

For the foregoing reasons, the court will enter an order granting the defendant's motion for summary judgment and denying the plaintiff's motion. Because the foregoing analysis also disposes of the plaintiff's claims for the avoidance of any additional severance payments in addition to those to which the parties have stipulated, the court's order will dismiss this adversary proceeding.

###

---

[5] The plaintiff's response to the defendant's cross-motion for summary judgment states an intention to file a motion for leave to amend the complaint to seek the avoidance of the transfer of vacation pay as a preference. Although no such motion has been filed to date, the vacation pay would not be avoidable for the same reason that the severance payments are not avoidable, i.e., because the payments were made prior to the applicable 90-day preference period.